IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOEY SHASKE, a minor child, by and through his parents, natural guardians, and next friends, JODIE SHASKE and JOSHUA SHASKE,<br><br>Plaintiff,<br><br>vs.<br><br>CARMIKE CINEMAS, INC., a Delaware corporation,<br><br>Defendant. | 4:13-CV-3137<br><br>MEMORANDUM AND ORDER |

    The plaintiff, Joey Shaske, alleges that the defendant, Carmike Cinemas, discriminated against him in violation of the Americans with Disabilities Act (ADA) when it terminated his employment at its theater in Scottsbluff, Nebraska. Carmike, however, contends that the plaintiff was terminated as part of a reduction-in-force, and has moved for summary judgment. Filing 54. Because there are genuine issues of material fact precluding summary judgment, the Court will deny Carmike's motion.

BACKGROUND[1]

    Carmike is a motion picture exhibitor that operates movie theaters across the United States, including the Monument Mall 6 Theater in Scottsbluff. Filing 55 at 9. In the spring of 2012, the Theater's manager, Cynthia Hamilton, hired several employees in anticipation of the busy summer movie season: Ashley Longoria, Tristan Scott, Ashley Shimek, and the plaintiff. Filing 55 at 9-10; filing 59 at 5.

    When he was interviewed, the plaintiff told Hamilton that he had previously been afflicted with brain cancer. Filing 55 at 10; filing 59 at 1. It is undisputed for purposes of the present motion that the plaintiff has anterograde amnesia, which limits his ability to form new memories. Filing 55 at 10; filing 59 at 1-2. The plaintiff told Hamilton that he had problems

---

[1] Many of the salient facts are uncontroverted, and are set forth in the parties' respective statements of undisputed material facts. See NECivR 56.1.

relating to short-term memory loss and had difficulty memorizing long lists of information. Filing 55 at 10. But, the plaintiff explained, he had learned coping skills such as writing notes to himself, and leaving things in the same place so he could find them. Filing 55 at 10. The plaintiff also told Hamilton that he would have to miss work from time to time for medical appointments. Filing 55 at 10.

      The plaintiff began work at the Theater on May 12, 2012, working as a concessions attendant. Filing 55 at 11. He also worked, at times, as a cashier, usher, and arcade attendant. Filing 59 at 1. The plaintiff was permitted to write messages to himself as reminders, and to use his mobile phone to take pictures of his schedule. Filing 55 at 11. And Hamilton provided the plaintiff with written checklists to help him in his duties. Filing 55 at 11. Those duties included cleaning, taking tickets and offering directions, serving concessions, and giving change. Filing 59 at 2. He was generally able to perform these tasks. Filing 59 at 3. No verbal or written warnings, or disciplinary action, or complaints from other employees, were documented with respect to the plaintiff. Filing 59 at 2-3.

      The plaintiff's employment was not without incident, however, at least according to Carmike. The Theater's assistant manager says that other employees complained about the plaintiff leaning on counters and not working while other employees were, stopping during house checks to watch movies, and talking to friends instead of helping his coworkers. Filing 61 at 90-91. And Hamilton says there were a couple of reports that the plaintiff had used profanity in front of the Theater's customers. Filing 61 at 102. Hamilton says she "coached" the plaintiff about such things as leaning on the counters and hanging out with his friends. Filing 61 at 70. The Theater's employee manual would suggest that at least some of the infractions attributed to the plaintiff should have been formally documented by management. Filing 59-2 at 24-25. But Hamilton says she prefers not to employ formal discipline during an employee's first few months, because it's discouraging and bad for morale. Filing 61 at 105. The plaintiff, for his part, denies swearing in front of customers. Filing 59 at 1-2.

      On June 14, 2012, the plaintiff went with his mother to Denver for a doctor's appointment. Filing 59 at 6. He received a text message from Hamilton's husband asking if he was on his way to work, and noting that he was scheduled to work that day. Filing 59 at 6. He replied, apologizing for any confusion but stating that he was "pretty sure" he had told Hamilton that he had a doctor's appointment. Filing 59 at 6. Hamilton texted the plaintiff telling him that he would need to bring a doctor's note verifying the appointment. Filing 59 at 6. The plaintiff replied, asking when he was scheduled to work again. Filing 59 at 7. Hamilton responded that the plaintiff

- 2 -

was scheduled to work the next day—June 15—from 6 to close. Filing 59 at 7. The plaintiff claims that he had informed Hamilton of the doctor's appointment. Filing 59-1 at 2. Hamilton, however, says she had not been informed, and that the plaintiff never submitted a "Time Off Request Form," which she requires of employees who want to be removed from a scheduled shift. Filing 59-2 at 52; filing 61 at 106.

In the meantime, in May 2012, Hamilton (and other theater managers in the same district) began receiving emails from the Carmike district manager, advising them that business was slow and emphasizing the need to control expenses, including payroll. Filing 55 at 11; filing 59 at 4. Those emails did not require any layoffs, and there are other ways to cut payroll, such as sending employees home or adjusting scheduling. Filing 59 at 4; filing 59-2 at 120-21. But the emails did emphasize cutting payroll "as much as possible in the month of June." Filing 59 at 4; filing 61 at 113, 133, 148. Hamilton decided to terminate three employees. Filing 55 at 12. Hamilton says she wanted to retain more experienced workers, so she focused her attention on the four recently-hired employees: Longoria, Scott, Shimek, and the plaintiff. Filing 55 at 12. According to Hamilton, Scott had distinguished herself, and was a better employee than the other three, so she decided to retain Scott and terminate the others.[2] Filing 55 at 12. Hamilton says she decided to terminate the plaintiff on June 10 or 11. Filing 59-2 at 55. The plaintiff was told of his termination when he reported to work on June 15—the day after he had missed work for his doctor's appointment. Filing 59 at 7. Hamilton says that she had asked the plaintiff to provide a doctor's note anyway—despite the fact that she had already decided to terminate him—because it could affect whether he was eligible to be rehired. Filing 61 at 106.

When the plaintiff was informed of his termination on June 15, 2012, he was told by the assistant manager who spoke to him that he "had done nothing wrong." Filing 59 at 8. The next day, the plaintiff's mother called and spoke with Hamilton, who said that the plaintiff had been terminated because Carmike did not have enough hours for him to work. Filing 59 at 8. When the plaintiff's mother questioned that explanation, however, Hamilton said that she didn't want to hurt the plaintiff's feelings, but the reason the plaintiff was terminated was that Hamilton did not think the plaintiff was capable of doing the job. Filing 59 at 8. The plaintiff's mother ended the telephone call before Hamilton could elaborate. Filing 59-2 at 76. Hamilton says that all she meant by her statement was that the plaintiff was too immature for the work force. Filing 61 at 73-74.

---

[2] The plaintiff contends that Longoria quit before being fired, filing 59-4, but the Court does not view that factual dispute as material.

- 3 -

Carmike asserts that the decision to terminate the plaintiff was based on economic necessity, but the plaintiff disputes that assertion. The plaintiff points to evidence that the Theater was hiring during the same timeframe. One potential new employee was contacted on June 6, 2012, and subsequently interviewed for a position at the Theater; he was told by the interviewer that the Theater was looking to immediately hire for weekends, holidays, and some weekdays. Filing 59 at 5-6. That interviewee was not hired, filing 61 at 105, but on July 11, two other new employees were. Filing 59 at 8. In addition, Shimek (one of the other employees terminated at the same time as the plaintiff) was contacted in August to gauge her interest in returning to work; the plaintiff, however, was not contacted. Filing 59 at 9. Hamilton says that when the plaintiff had been terminated by the assistant manager, the plaintiff had suggested that he thought he already had another job anyway. Filing 61 at 106-07. That, Hamilton says, was why the plaintiff was not later contacted about returning to work. Filing 61 at 106-07. The plaintiff, however, denies making such a statement. Filing 59-1 at 3.

After exhausting his administrative remedies, the plaintiff sued Carmike in state court, alleging, among other things, a violation of the ADA. Filing 1-1. Carmike removed the case to federal court, denied the plaintiff's claims, and now moves for summary judgment. Filing 1; filing 9; filing 54.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the

nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

The burden of proof in an ADA case[3] depends on whether the plaintiff is raising a disparate treatment claim or a reasonable accommodation claim. *See Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003). In this case, the plaintiff alleges discriminatory disparate treatment; accordingly, the traditional burden-shifting framework of *McDonnell Douglas*[4] will apply. *See Fenney*, 327 F.3d at 711-12. The plaintiff must initially establish each element of the prima facie case. *Id.* To establish a prima facie case of discrimination under the ADA, an employee must show that he is disabled within the meaning of the ADA, is a qualified individual under the ADA, and has suffered an adverse employment decision because of the disability. *Kallail v. Alliant Energy Corp. Servs., Inc.*, 691 F.3d 925, 930 (8th Cir. 2012). The employer must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Fenney*, 327 F.3d at 712. If the employer does this, then the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual. *Id.*

For purposes of summary judgment, Carmike does not dispute that the plaintiff is disabled within the meaning of the ADA and is a qualified individual under the ADA—that is, that the plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities; possesses the requisite skill, education, experience, and training for his position; and is able to perform the essential job functions, with or without reasonable accommodation. *See, e.g., Fenney*, 327 F.3d at 711-12. But Carmike contends that the plaintiff has failed to meet the third part of his prima facie case—that he has suffered an adverse employment action because of his disability.

The Court disagrees. First, the plaintiff points to Hamilton's statement to his mother that Hamilton did not think the plaintiff "can do this job."

---

[3] The plaintiff's complaint also refers to the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101 *et seq.* Filing 1-1 at 4. But the plaintiff has not identified any way in which the Nebraska law is meaningfully broader than federal law, and they are generally held to be coextensive in this regard. *See Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 777 n.3 (8th Cir. 2012).

[4] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Filing 59-2 at 78. Hamilton says all she meant by that was that the plaintiff was too immature for employment, and perhaps that is true. But it could also be interpreted as referring to limitations imposed by the plaintiff's disability. The plaintiff's termination also took place just 1 day after he missed work as a result of his disability, and a temporal connection between an accommodation and termination may permit an inference of causation. *See*, *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832-33 (8th Cir. 2002); *Foster v. Time Warner Entm't,* 250 F.3d 1189, 1195-96 (8th Cir. 2001). Hamilton says that the decision to terminate the plaintiff had already been made, and that may also be true—but it begs the question of why Hamilton told the plaintiff to report to work for a shift she already knew he wouldn't complete, and why she required a doctor's note. There are explanations for that too—but at this point, there are sufficient inferences going both ways to create a jury question as to credibility. The Court finds that the plaintiff's evidence is sufficient to permit a finding that he was terminated as a result of disability.

Carmike, of course, contends that there is a legitimate, non-discriminatory reason for the plaintiff's termination: necessary payroll cuts. And a reduction-in-force is a legitimate, non-discriminatory reason for an adverse employment action. *E.g.*, *Groves v. Cost Planning and Mgmt. Int'l, Inc.,* 372 F.3d 1008, 1009 (8th Cir. 2004). It is, therefore, the plaintiff's burden to demonstrate that this reason is pretextual. There are at least two routes by which a plaintiff may demonstrate a material question of fact at this final step of the analysis. *Gibson v. American Greetings Corp.*, 670 F.3d 844, 854 (8th Cir. 2012). First, the plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact. *Id.* Second, the plaintiff can directly persuade the Court that a prohibited reason more likely motivated the defendants. *Id.*

Under the first approach, the plaintiff must show that the employer's proffered reason was "unworthy of credence." *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 860 (8th Cir. 2005) (quotation omitted). He may do so by showing, for instance, that similarly situated employees were treated more leniently, or that the employer deviated from its policies. *EEOC v. Prod. Fabricators*, 763 F.3d 963, 970 (8th Cir. 2014); *see Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006). Under the second approach, the employee rebuts the employer's ultimate factual claim regarding the absence of discriminatory intent by demonstrating that sufficient evidence of discrimination exists for a jury to believe the plaintiff's allegations and find that the proffered explanation was not the true motivating explanation. *See Stallings*, 447 F.3d at 1052. In other words, the employee may concede that the proffered reason for the termination *would have been* a sufficient basis for

the adverse action while arguing that the employer's proffered reason was not the *true reason* for the action. *Id.*

The plaintiff combines aspects of both approaches here. He points to evidence that, he says, suggests that terminations were not economically necessary. And, of course, he points to Hamilton's remark to his mother, among other things, as evidence that even if the reduction-in-force was legitimate, he was selected for termination based on his disability. *See Kinsella v. Rumsfeld*, 320 F.3d 309, 314 (2d Cir. 2003); *compare*, *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 478 (7th Cir. 1999), *overruled on other grounds, Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1317 (8th Cir. 1996).

The Court finds that the evidence, taken in the light most favorable to the plaintiff, would support a finding that Carmike's stated justification for his termination was pretextual. While Carmike's evidence establishes that there was a need to cut "payroll," that falls short of showing that terminations were necessary, as the evidence also shows that there were steps short of terminating employees that could (and often were) taken to temporarily cut payroll. The interview and hiring of other personnel around the same time could suggest, to a reasonable jury, that instead of cutting payroll, Hamilton was trying to cut new employees whose performance was unsatisfactory. In July, the Theater hired new employees instead of recalling those who had purportedly been terminated for lack of work. And the Theater later contacted one of the employees who had been terminated along with the plaintiff, but did not contact the plaintiff. Of course, Hamilton explained each of those events, and a reasonable jury could believe her explanations. But the evidence falls short of establishing her credibility as a matter of law.

Hamilton's remark to the plaintiff's mother also establishes some inconsistency in Carmike's stated justification for the plaintiff's termination, and such inconsistencies have been held to support a finding of pretext., *See*, *e.g.*, *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1023 (8th Cir. 1998). To be fair, Carmike's evidence accounts for that inconsistency to some extent: there is no dispute that the three employees chosen for Carmike's reduction-in-force were chosen partly based on deficient performance. But that creates a different problem for Carmike, because the line between the plaintiff's "performance" and his disability cannot be definitively plotted. The plaintiff denies some of the allegations regarding his performance,[5] and those

---

[5] Neither party addresses whether any of the plaintiff's reported performance issues could be attributed to his disability. For instance, there is evidence suggesting that one aspect of the plaintiff's medical condition is "filter loss," which may cause inappropriate speech. Filing 59-2 at 86. But because it has not been raised by the parties, the Court does not consider it.

- 7 -

allegations and others were not documented pursuant to the Theater's policies. Again, Hamilton has provided an explanation, and a reasonable jury might fully credit that explanation. But it might not.

In sum, the Court finds that it is for a jury to decide what was meant by the statement that the plaintiff was unable to "do this job." Filing 61 at 40. And it is for a jury to decide whether Carmike's explanation of a reduction-in-force is to be believed—and, if not, whether the evidence of pretext supports an inference of discrimination. *See Young,* 152 F.3d at 1024. The Court recognizes that it is not a super-personnel department with authority to review the wisdom or fairness of the business judgments made by employers. *See, Guimaraes v. SuperValu, Inc.,* 674 F.3d 962, 977 (8th Cir. 2012); *Stallings,* 447 F.3d at 1052; *Wallace,* 415 F.3d at 860. But the question here is not wisdom or fairness—it is credibility. And as the evidence stands, there are enough variables to warrant consideration by a jury.

IT IS ORDERED:

1. Carmike's Motion for Summary Judgment (filing 54) is denied.

2. This matter is referred to the United States Magistrate Judge for case progression.

Dated this 21st day of January, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge